# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

MARTIN A. SCHOTT, Chapter 7 Trustee
for the bankruptcy estate of InforMD, LLC,

CIVIL ACTION

VERSUS

No. 18-759-JWD-RLB

SHELLEY S. MASSENGALE, et al.

## RULING AND ORDER

This matter is before the Court on a motion to dismiss and in the alternative a motion for a more definite statement filed by Matthew Skellan and Skellan Medical, LLC ("Defendants") entitled, *Motion to Dismiss Claims against Matthew Skellan and Skellan Medical, L.L.C.* ("*Motion*"). (Doc. 22.) [1] Plaintiff, Martin A. Schott ("Schott" or "Trustee"), filed an *Opposition to Defendants' Motion to Dismiss* ("*Response*"). (Doc. 30.) Defendants filed a reply, entitled *Reply Memorandum to InforMD's Opposition to Motion to Dismiss of Defendants*. (Doc. 36.) Oral argument is not necessary. Having carefully considered the law, allegations in the *Complaint for Damages* ("*Complaint*"), and arguments of the parties, Defendants' *Motion* is granted in part and denied in part as follows:

As to Count I, Breaches of Duty of Care and Loyalty, the Court will deny the *Motion* because the *Complaint* alleges sufficient facts to state a plausible claim that (1) Defendants had a fiduciary relationship with InforMD and the minority members of InforMD; and (2) Defendants had fiduciary duties to InforMD and its members; and (3) Defendants intentionally breached their

---

[1] The *Motion* is brought by two of nine total Defendants. The *Compliant* names as Defendants: Shelley S. Massengale, individually and as usufructuary and legal representative of the Massengale Children, Mickey Guidry, Jesse Daigle, Ryan Forsthoff, Matthew Skellan, C-Squared Management, LLC, RC Consulting of Louisiana, LLC, Executive Development Advisors, LLC, and Skellan Medical, LLC. However, only Matthew Skellan and Skellan Medical, LLC bring the *Motion*.

fiduciary duties. In addition, the Court will not dismiss Count I because of prescription or peremption because on the face of the *Complaint* it is not clear that the claim for breach of fiduciary duties is barred by Louisiana Revised Statutes 12:1502.

As to Count II, Fraud and Conspiracy to Commit Fraud, the Court will grant the *Motion* because the *Complaint* fails to plead fraud and/or fraud by omission with particularity as required by Federal Rule of Civil Procedure 9(b). In addition, the Court recognizes that, under Louisiana law, conspiracy to commit fraud is not an independent cause of action but depends on the underlying fraud. Therefore, the Court will dismiss the claim for conspiracy to commit fraud because Plaintiff has not adequately pled the claim for fraud.

As to Count III, the Court grants the *Motion* in part and will dismiss the claim for receipt of payment not due based on Trustee's concession that the claim, as alleged, does not meet the elements of the statute. As to the claim for unjust enrichment, the Court denies the *Motion* and will not dismiss based on the arguments relating to the "no other remedy available at law" element.

As to Count IV, Conversion, the *Motion* is denied. The Court will not dismiss Trustee's claim for conversion because the *Complaint* alleges sufficient facts to state a claim. In addition, the Court will apply Louisiana Revised Statutes 12:1502(D)'s two-year prescriptive period to the claim of conversion and will not dismiss Count IV based on prescription at this time.

As to Count V, Fraudulent Conveyance, the *Motion* is denied because the *Complaint* alleges sufficient facts as to the elements of a claim for constructive fraud.

The Court will allow Trustee twenty-eight days to file an amended complaint as contemplated by Federal Rule of Civil Procedure 15(a).

<u>RELEVANT PROCEDURAL BACKGROUND</u>

Plaintiff, as Chapter 7 Trustee of the InforMD bankruptcy case (Case No. 17-10759), initiated Adversary Proceeding No. 18-1025 by filing the *Complaint* in the United States

Bankruptcy Court for the Middle District of Louisiana. (*Complaint*, Doc. 1 in Adversary Pro. No. 18-1025.) Defendants Shelley S. Massengale and C-Squared Management, LLC filed a motion to withdraw the reference. (*Motion to Withdraw Reference*, Doc. 25 in Adversary Pro. No. 18-1025; Doc. 1 in 18-cv-759.) On August 10, 2018, the Court entered an order granting the motion to withdraw reference and the civil action was brought before this Court. (*Order on Motion to Withdraw Reference*, Doc. 4 in 18-cv-759.)

FACTUAL ALLEGATIONS IN THE COMPLAINT

For the purpose of ruling on the *Motion*, the Court accepts as true the following facts pled in the *Complaint*. *See Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

InforMD is a Louisiana limited liability company that was formed on December 8, 2010 and ceased operations on October 31, 2016. (*Complaint*, Doc. 1 in Adversary Pro. 18-1025 at ¶ 7.) InforMD filed a Chapter 7 bankruptcy case on June 16, 2017.[2] The Plaintiff, Martin A. Schott, was appointed as Chapter 7 Trustee of InforMD's bankruptcy estate and brought this case on behalf of the bankruptcy estate against multiple defendants including but not limited to Skellan and Skellan Medical, LLC. (*Id.* at ¶¶ 1-2.)

On March 11, 2014, Skellan signed an Executive Employee Contract and was given a 3% ownership interest in InforMD. (*Id.* at ¶ 12.) Skellan served as Vice-President of Sales. (*Id.*) Under InforMD's Operating Agreement, the managing members were able to delegate day to day management responsibilities of their duties as fiduciaries to appointed officers, such as Skellan. (*Id.* at ¶ 13.) As of May 15, 2015, Skellan owned 3% of InforMD. (*Id.* at ¶ 15.) On December 15, 2015, Skellan resigned as an officer of InforMD and also resigned as an employee of InforMD. (*Id.* at ¶ 16). He retained his 3% ownership interest in InforMD. (*Id.*)

---

[2] The Court takes judicial notice that the Chapter 7 voluntary petition for non-individuals for bankruptcy relief in Bankruptcy Case No. 17-10579 was filed as Doc. 1 on June 16, 2017.

InforMD's business pursuits included medication sales, prescription dispensing, medical monitoring, toxicology, compound pharmacy sales, pharmacy sourcing, and specialty pharmacy services. (*Id.* at ¶ 7.) InforMD's sales staff worked with physicians to encourage them to dispense prescription drugs directly from their clinics and sometimes the sales staff acted as a purchasing agent between the physician and prescription drug manufacturers. (*Id.* at ¶ 18.) The costs and expenses of this line of business resulted in meager net income (*Id.*)

InforMD began its mail-order compound medication business late in the fall of 2012 working with Chris Pogosyan who owned compounding pharmacies and pharmaceutical manufacturing companies ("Pogosyan"). (*Id.* at ¶ 19.) Pogosyan and InforMD did not have a written contract setting out their business relationship but instead operated on a verbal understanding. (*Id.*)

InforMD/Pogosyan's mail-order business model for compound prescriptions operated as follows:

>    (1) InforMD's sales staff enlisted physicians to prescribe compound topical lotions and creams that were primarily produced by Pogosyan's pharmacies, such as Cornerstone Compounding Pharmacy ("CCP");
>
>    (2) Physicians faxed prescriptions to Pogosyan's pharmacies;
>
>    (3) Pogosyan's pharmacies shipped the compound prescriptions directly to the patient;
>
>    (4) InforMD's staff made follow-up calls to patients receiving the compound prescriptions to confirm receipt and satisfaction. (*Id.*)

In return for InforMD's staffs' work, InforMD received 50-70% of the insurance reimbursements paid to the Pogosyan pharmacies. (*Id.*) Compound prescriptions were reimbursed at an astronomically high rate from 2012 to 2015, making this business model lucrative. (*Id.*) Because

of the compound prescription sales, InforMD's gross revenue increased from $301,719.61 to its peak at $24,221,593.12 in 2014. (*Id.* at ¶ 20.) In 2015, when CMS reduced the reimbursement rates for compound prescriptions, the mail order business for compound prescriptions dried up. (*Id.*) In 2015, InforMD's gross revenue totaled $21,371,189.60. (*Id.*)

After the change in reimbursement rates, InforMD and Pogosyan turned to other lines of business. (*Id.* at ¶ 21.) One line of business involved InforMD's sales staff selling Pogosyan's raw pharmaceutical components to pharmacies that would make the compounds. (*Id.*) InforMD worked with Pharmaceutica North America ("PNA") for these raw pharmaceutical sales. (*Id.*) InforMD also started a "specialty pharmacy business" that marketed Pogosyan's non-compounded topical medications to pharmacies and physicians. (*Id.* at ¶ 22.) The revenue from these lines of business did not bolster InforMD's revenue to its 2014 levels after the change in reimbursement rates for compound prescriptions. (*Id.* at ¶ 36.)

In 2016, a "Purchase and Sale of Membership Interest in [I]nforMD, LLC" ("Buy-Out Agreement") was drafted to be a buy-out of Skellan's and other members' ownership interests in InforMD. (*Id.* at ¶ 39.) The Buyer was InforMD. (*Id.*) The Buy-Out Agreement included the following terms:

> (1) InforMD was to pay $848,000.00 for the selling members combined interests. (*Id.*)
>
> (2) InforMD was to pay $711,652.00 for unpaid salaries and reimbursements. (*Id.* at ¶ 40.)

(3) The selling members were to receive a full release from any and all obligations to pay their respective shares of the still climbing $400,000.00 legal fees owed by the selling members in the *InforMD, LLC v. DocRX*[3] case.[4] (*Id.*)

(4) The selling members would divest their membership units in InforMD. (*Id.* at ¶ 86.)

One of InforMD's minority non-managing members, who was also employed as InforMD's Controller, Ruth Bass ("Bass"), raised objections to the Buy-Out Agreement because:

(1) InforMD's 2015 year-end loss was $458,585.00. (*Id.* at ¶ 41.);

(2) The 2016 forecast was not optimistic. (*Id.*);

(3) Bass did not believe the membership interest should be valued at $1,600/unit. (*Id.*);

(4) The Buy-Out Agreement needlessly burdened InforMD with $1.6 million in debt. (*Id.*)

Bass was threatened to sign the agreement or forfeit her 2% interest and her $20,000.00 investment. (*Id.*)

The Buy-Out Agreement was signed by all parties in February 2016. (*Id.* at ¶ 39.) InforMD made small initial payments totaling approximately $116,000 on the Buy-Out Agreement but has not paid the selling members according to the pay schedule in the Buy-Out Agreement, and the equity purchase price has never been paid. (*Id.* at ¶¶ 44 and 88.)

At the meeting of creditors convened pursuant to 11 U.S.C. § 341, Brian Juban, an InforMD member's attorney, testified that the Buy-Out Agreement was intended to drain

---

[3] The Court takes judicial notice of the existence of *InforMD, LLC v. Doc. RX*. This is a closed case that was pending in the Middle District of Louisiana before the Honorable Judge James J. Brady as Civil Docket 3:13-cv-00533-JJB-EWD.

[4] The precise language in the release, as alleged in the *Complaint*, was to discharge, "all claims, demands, causes of action, and/or rights of action against each other and each parties' respective members, subsidiaries, affiliates, representatives, employees, agents or assigns, whether presently known or unknown, related in any way to Buyer, Buyer's business activities, or the business activities of the past, present, or future members of Buyer." (Doc. 1 in Adv. Pro. 18-1025, ¶ 43.)

InforMD's capital to get the money out of InforMD. (*Id.* at ¶ 45.) InforMD received nothing in exchange for the approximately $116,000 it paid. (*Id.* at ¶¶ 89-91.) InforMD was insolvent on the date the transfer was made or became insolvent as a result of the transfer. (*Id.* at ¶ 92.)

While preparing for a deposition scheduled for February 20, 2016 in the *DocRX* case, Bass reviewed depositions of the other members and noticed references to payments made to those members. (*Id.* at ¶ 55.) At that point, Bass thought the other members misunderstood the commission and payment structure. (*Id.*) In December 2016-January 2017, while preparing to respond to a federal subpoena in another case, Bass discovered never-before-seen documents and emails revealing various diversions of revenue that should have been received by InforMD and an apparent conspiracy to divert these sums due to InforMD. (*Id.*) At that time, Bass further investigated the records, correspondence files, and emails and concluded that since 2014 Defendants had been diverting payments away from InforMD in the following amount: Matt Skellan/Skellan Medical, $1,078,431.19. (*Id.* at ¶ 56.)

The payments diverted from the Pogosyan-entities to Defendants were made without InforMD's knowledge and without the knowledge of InforMD's minority members. (*Id.* at ¶ 23.) Individually and as a collective group, Defendants did not tell the disinterested minority members of InforMD about the decision to accept payments from the Pogosyan entities for work done by InforMD's sales personnel. (*Id.* ¶ 68.)

Starting in 2014, Skellan along with the other defendants, received direct payments from Pogosyan's compounding pharmacies, primarily CCP, as well as payments from Pogosyan's pharmaceutical distribution/manufacturing entity, PNA. (*Id.* at ¶ 23.) The payments from the Pogosyan entities were the result of work performed by InforMD's sales force. (*Id.*) Defendants knew that the payments they received belonged to InforMD. (*Id.* at ¶ 80.) One payment from PNA

"was sent to [I]nforMD in 'error' and [a managing member] immediately requested its return to PNA for the check to be reissued." (*Id.*)

Defendants also received payments from Pogosyan entities through Origin Healthcare Advisors, LLC ("OHA") which was formed in December 2014. (*Id.* at ¶ 27.) Skellan owned a 2.5% membership interests in OHA. (*Id.*) Skellan enjoyed payments from OHA based on InforMD's work. (*Id.*) InforMD's minority members were never informed of the existence of OHA and the relationship between OHA and Pogosyan. (*Id.*) Skellan accepted payments from OHA and the Pogosyan entities in the name of Skellan Medical. (*Id.* at ¶ 33.)

OHA was used to facilitate and conceal the skimming of PNA and CCP commissions from InforMD and to make new partnerships without InforMD and its minority members. (*Id.* at ¶ 28.) From June 2014 to October 2015, OHA received approximately $25 million from two Pogosyan companies, PNA and CCP. (*Id.* at ¶ 29.) There is no evidence that Skellan, or any other defendant directly performed any services for PNA or CCP in that timeframe. (*Id.*) However, in responding to questions during the *DocRX* case, a defendant explained that the receipt of separate payments was because a team of certain InforMD members did the same thing done inside InforMD as work for PNA. (*Id.* at ¶ 35.) Defendants through OHA got the lion's share of the commissions from Pogosyan entities, while leaving the overhead and other operational expenses (i.e., commissions to the actual salesmen) to InforMD. (*Id.* at ¶ 28.)

Skellan testified during a deposition in the *DocRX* case that pharmacy management fees for services performed by InforMD were funneled through OHA. (*Id.* at ¶ 34.) He also testified that OHA did not perform services for PNA, as OHA plans for other services "never came to fruition." (*Id.*) Likewise, Skellan admitted during his deposition that in forming his Health LOGIC

Partners, LLC that he needed no seed capital because a majority of the business was moved from InforMD. (*Id.* at ¶ 38.)

In accepting the payments from the Pogosyan entities, Defendants intentionally repeatedly acted in their own self-interest. (*Id.* at ¶ 63.) The minority members of InforMD made a demand for an accounting of funds believed to have been diverted by Defendants and for the return of at least a portion of these funds. (*Id.* at ¶ 81.) Defendants declined to give an accounting and further declined to return any of the funds. (*Id.*)

APPLICABLE STANDARD

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct. at 346-47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*,

55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra,* nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257; *Twombly,* 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.,* No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.,* 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

<u>CONSIDERATION OF EXHIBITS</u>

In general, pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6)[,]…matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *United States v. Rogers Cartage Co.,* 794 F.3d 854, 861 (7th Cir. 2015). There are some exceptions to this ostensibly ironclad standard. On a motion to dismiss, the court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' " *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross and Blue Shield of Georgia, Inc.,* No. 14-11300, 2018 WL 2943339, at *3 (5th Cir. 2018) (citing *Wolcott v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey,* 540 F.3d at 338) (citations and internal quotation marks omitted)).

As the Fifth Circuit has explained, "[i]f the district court does not rely on materials in the

record, such as affidavits, it need not convert a motion to dismiss into one for summary judgment." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995)). "[T]he mere submission [or service] of extraneous materials does not by itself convert a Rule 12(b)(6) [or 12(c) ] motion into a motion for summary judgment." *Id.* (quoting *Finley Lines Joint Protective Bd. v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (internal quotation marks omitted) (second alteration in original)). A district court, moreover, enjoys broad discretion in deciding whether to treat a motion to dismiss as a motion for summary judgment. *See St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 280 n.6 (5th Cir. 1991).

The Fifth Circuit has recognized a limited exception to the general rules under Federal Rule of Civil Procedure 12(d) and related jurisprudence. The Fifth Circuit has approved district courts' consideration of documents attached to a motion to dismiss, when such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See Werner v. Dept. of Homeland Sec.*, 441 Fed. App'x. 246, 248 (5th Cir. 2011); *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins*, 224 F.3d at 498-99.

In this case, Defendant request the Court consider the Employee Agreement, the Amended Operating Agreement, the Release, the Buy-Out Agreement, and the Restricted Class B Common Units Agreement. Defendants argue that each exhibit is referenced in the *Complaint* and central to Trustee's claims. The Court agrees that Amended Operating Agreement, and the Buy-Out Agreement are central to Trustee's claims and will consider the exhibits as necessary when ruling on the *Motion*. The Court will not consider the remaining exhibits when ruling on the *Motion*.

*a. Count I: Breaches of Duty of Care and Loyalty*

The Court will deny the *Motion* as it pertains to Count I, because the *Complaint* alleges sufficient facts to show a plausible claim that (1) Skellan had a fiduciary relationship with InforMD and the minority members of InforMD; (2) Skellan owed fiduciary duties to InforMD and its minority members; and (2) intentionally breached those fiduciary duties by accepting payments for work done by InforMD's sales staff and failing to disclose those payments to InforMD and its minority members. In addition, on the face of the *Complaint* it is not clear that the claim for breach of fiduciary duties is prescribed by Louisiana Revised Statutes 12:1502. Therefore, the Court will not dismiss the Count based on prescription at this time.

1. Parties Arguments

Defendants assert that the *Complaint* fails to state a claim for breach of fiduciary duty because Skellan was never a manager of InforMD. Defendants that the claim fails because (1) Skellan's position as the Vice President of Sales did not make him an officer under the Amended Operating Agreement; and (2) there are no allegations that the managers delegated management responsibilities to Skellan. (Doc. 22-1 at 10.)

Defendants assert that Louisiana Revised Statutes 12:1320 "specifies that the liability of members, managers, employees or agents of an LLC is determined solely and exclusively under the provisions of Louisiana LLC law." Doc. 22-1 at 9.) They argue that under Louisiana law, only a manager or a managing member owes a fiduciary duty to the LLC that can be limited by the operating agreement. (Doc. 22-1 at 10.) Therefore, because Skellan was never a manager, he owed no duties to InforMD greater than an employee. (Doc. 22-1 at 11.)

---

[5] To the extent that the Court does not address an argument raised by the parties, the Court does not find the argument persuasive.

Defendants also argue that the *Complaint* does not all allege sufficient facts to state a claim for breach of loyalty against Skellan under Louisiana Revised Statutes 12:1314 because (1) there are no allegations that Skellan acted in a grossly negligent manner regarding the payments that the *Complaint* alleges should have been made to InforMD and (2) Skellan's ownership interest was limited to a 1% profit interest in InforMD and he had no authority to bind or vote on any action affecting InforMD. (Doc. 22-1 at 12-13.)

Trustee opposes the *Motion* and asserts that the *Complaint* alleges sufficient facts to state a claim for breach of fiduciary duty for each of Defendants. Trustee argues that a fiduciary relationship exists between each Defendant and InforMD as well as the minority members. Trustee argues that the *Complaint* sets out the authority and control each defendant had over InforMD and sets forth facts sufficient to show that Defendants had a duty of loyalty that was breached. (Doc. 30 at 15.)

Defendants argue that even if the *Complaint* states a claim for breach of fiduciary duties, that claim has been prescribed by Louisiana Revised Statutes 12:1502 because:

> Giving the Trustee the benefit of the doubt, last date by which the act or neglect was or should have been discovered was January 31, 2017. To be timely, the claim for breach of fiduciary duty should have been filed by January 31, 2018. However, the Complaint was not filed until June 6, 2017, [sic] more than five months later.

(Doc. 22-1 at 15.) Trustee responds that the claims for breach of fiduciary duties are not prescribed under Louisiana Revised Statutes 12:1502(D). (Doc. 30 at 29.) Trustee asserts that the relevant prescriptive period "began to run in the late December 2016-January 2017 time frame, when Ruth Bass was tasked with answering a federal subpoena on behalf of the defunct [I]nforMD in an unrelated matter." (Doc. 30 at 30.) Trustee maintains Bass reviewed documents and emails at that time that "led her to suspect, for the first time, that Defendantss had been diverting a considerable

amount of [I]nforMD's receivables to themselves." (Doc. 30 at 30.) Therefore, Trustee asserts that the *Complaint* was timely filed. (Doc. 30 at 30.)

2. <u>Analysis</u>

    *A.* <u>*Louisiana law relating to fiduciary duty of members or managers of an LLC.*</u>

To state a claim for breach of fiduciary duty under Louisiana law, a plaintiff must show "(1) existence of a fiduciary duty, (2) a violation of that duty by the fiduciary, and (3) damages resulting from the violation." *U.S. Small Bus. Admin. v. Beaulieu*, 75 F. App'x 249, 252 (5th Cir. 2003) (citing *Omnitech International, Inc. v. The Clorox Co.,* 11 F.3d 1316, 1330 F. 20 (5th Cir.), *cert. denied,* 513 U.S. 815, 115 S.Ct. 71, 130 L.Ed.2d 26 (1994)); *see Hunters Run Gun Club, LLC v. Baker*, No. CV 17-176-SDD-EWD, 2019 WL 3400696, at *4 (M.D. La. July 26, 2019); *see also* La. R.S. 12:1314 (E) ("A person alleging a breach of the duty of diligence, care, judgment, and skill owed by a member or manager under Subsection A has the burden of proving the alleged breach of duty, . . . and, in a damage action, the burden of proving that the breach was the legal cause of damage suffered by the limited liability company.").

"[W]hether a fiduciary duty exists, and the extent of that duty, depends upon the facts and circumstances of the case and the relationship of the parties. As a basic proposition, for a fiduciary duty to exist, there must be a fiduciary relationship between the parties." *Omega Ctr. for Pain Mgmt., L.L.C. v. Omega Inst. of Health, Inc.*, 07-558 (La. App. 5 Cir. 12/27/07), 975 So. 2d 48, 51–52.

A fiduciary relationship is one where there "is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Omega Ctr. for Pain Mgmt.*, 975 So. 2d at 51–52. As the Supreme Court of Louisiana explained,

> [A] fiduciary relationship has been described as "one that exists 'when confidence is reposed on one side and there is resulting superiority and influence on the other.'" The word "fiduciary," as a noun, means one who holds a thing in trust for another, a trustee; a person holding the character of a trustee, or a character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires; a person having the duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking.

*Scheffler v. Adams & Reese, LLP*, 2006-1774 (La. 2/22/07), 950 So. 2d 641, 647 (internal citations omitted); *see New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 2009-1433 (La. App. 4 Cir. 5/26/10), 40 So. 3d 394, 404, writ denied, 2010-1475 (La. 10/1/10), 45 So. 3d 1100 ("The word 'fiduciary,' as a noun, means one who holds a thing in trust for another, a trustee; a person holding the character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires; a person having a duty, created by his undertaking.").

In Louisiana, the fiduciary duty owed by members or managers of an LLC is set by statute. Under Louisiana Revised Statutes 12:1320, "The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter."

Louisiana Revised Statutes 12:1314(A)(1) sets out that a member or manager of an LLC has a "fiduciary relationship to the limited liability company and its members and shall discharge his duties in good faith, with the diligence, care, judgment, and skill which an ordinary prudent person in a like position would exercise under similar circumstances." Louisiana Revised Statutes 12:1314(B) goes onto state that a member or manager is not personally liable to the limited liability company or its members "unless the member or manager acted in a grossly negligent manner . . . or engaged in conduct which demonstrates a greater disregard of the duty of care than gross negligence, including but not limited to intentional tortious conduct or intentional breach of his

duty of loyalty." La. R.S. 12:1314(B).[6] To prevail on a claim for breach of fiduciary duty, a plaintiff must also show that the business judgment rule is inapplicable and that the breach of the fiduciary duties "was the legal cause of damage." La. R.S. 12:1314(E).

In addition, Louisiana law recognizes that an employee may owe a fiduciary duty to his employer.[7] *Harrison v. CD Consulting, Inc.*, 2005-1087 (La. App. 1 Cir. 5/5/06), 934 So. 2d 166, 170 ("Employees and/or mandataries owe a duty of fidelity to their employers and/or principals. An employee is duty bound not to act in antagonism or opposition to the interest of the employer.") (internal citation omitted). Courts have found a breach in an employee's fiduciary duty to his employer "when an employee has engaged in dishonest behavior or unfair trade practices for the purpose of his own financial or commercial benefit." *Id.*

   B. *Analysis regarding the sufficiency of the allegations relating to breach of fiduciary duty.*

Skellan argues that the *Complaint* fails to allege that InforMD's managers appointed Skellan as an officer under the Amended Operating Agreement and delegated to Skellan the responsibilities of management. The Court does not agree.

---

[6] Louisiana Revised Statute 12:1314 defines gross negligence "as a reckless disregard of or a carelessness amounting to indifference to the best interests of the limited liability company or the members thereof."

[7] An employee's fiduciary duties have long been recognized under state law. *Texana Oil & Ref. Co. v. Belchic*, 150 La. 88, 102, 90 So. 522, 527 (1922) states

> The employee is duty bound not to act in antagonism or opposition to the interest of the employer. Every one, whether designated agent, trustee, servant, or what not, who is under contract or other legal obligation to represent or act for another in any particular business or line of business or for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common sense and honesty as well as of law. The agent is not entitled to avail himself of any advantage that his position may give him to profit beyond the agreed compensation for his service. He may not speculate for his gain in the subject-matter of his employment. He may not use any information that he may have acquired by reason of his employment either for the purpose of acquiring property or doing any other act which is in opposition to his principal's interests. He will be required to account to his employer for any gift, gratuity, or benefit received by him in violation of his duty, or any interest acquired adverse to his principal without a full disclosure, though it does not appear that the principal has suffered any actual loss by fraud or otherwise.

The *Complaint* alleges that Skellan signed an Executive Employee Contract and was given a 3% ownership interest and that pursuant to the operating agreement "the managing members were given the authority to delegate their day to day management responsibilities of their duties as fiduciaries to appointed officers such as they did with . . . Skellan as VP of Sales." (Doc. 1 in Adversary Pro. 18-1025 at ¶ 12.) In addition, the *Complaint* alleges that as an appointed officer, Skellan owed the fidicuary duties of care and loyalty to InforMD as well as its members. (*Id.* at ¶ 60.) Although these allegations do not prove that Skellan was appointed as an officer and therefore had a fiduciary relationship with and fiduciary duties to InforMD, they are sufficient to state a plausible claim for relief.

Defendants also argue that the *Complaint* fails to allege that Skellan acted with gross negligence or a greater disregard for any fiduciary duties he may have had. The Court does not agree. The *Complaint* alleges that Skellan as an appointed officer acted in bad faith and reckless disregard of these fiduciary duties by intentionally diverting funds to themselves or their respective LLCs for work performed by InforMD. (*Id.* at ¶¶ 62-63.) Further, the *Complaint* identifies that by accepting payments from Pogosyan entities for work done by InforMD's staff, Defendants profited from those payments while leaving the expenses of paying commissions to the sales staff and other overhead to InforMD. Intentional actions and actions taken with reckless disregard are a greater disregard of the duty of care than gross negligence as required by statute.

Overall, the Court concludes the factual allegations are sufficient to put Defendants on notice that Trustee has stated a claim for breach of fiduciary duty. The Court will not dismiss Count I of the *Complaint* based on the argument that the factual allegations do not state a plausible claim for relief for breach of fiduciary duty.

*C. Louisiana Law related to prescription and peremption of claims for breach of fiduciary duty by a member or manager of an LLC.*

A claim for breach of fiduciary duty by a member or manager of an LLC is prescribed and perempted after a certain time set by statute under Louisiana law. La. R.S. 12:1502. For a claim alleging that the member or manager acted with gross negligence in breaching his fiduciary duty, the action is prescribed after one year and perempted after three. La. R.S. 12:1502(C). For a claim alleging that the member or manager engaged in "intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for an intentional unlawful distribution, or for acts or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law," the action is prescribed after two years and perempted after three. La. R.S. 12:1502(D); *see In re Levitron, L.L.C.*, No. 08-10656, 2011 WL 4024805, at *3 (Bankr. E.D. La. Sept. 9, 2011) ("Thus, two things are clear to this court from a plain reading of the subsections: prescription is prescription and is one year if covered by paragraph C and two years if covered by paragraph D. Peremption is peremption and is three years in both subsections.").

"Generally, the party raising an exception of prescription or peremption ordinarily bears the burden of proof at the trial of a peremptory exception. However, when prescription is evident from the face of the pleadings, the plaintiff bears the burden of showing the action has not prescribed." *Roane v. Jones*, 47,860 (La. App. 2 Cir. 4/10/13), 116 So. 3d 700, 707, *on reh'g* (May 15, 2013), *writ denied,* 2013-1299 (La. 9/20/13), 123 So. 3d 175. Under Louisiana law, "prescriptive statutes are to be strictly construed against prescription and in favor of the claim that is said to be extinguished. Of the two possible constructions, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement, should be adopted." *Louisiana Health Serv. & Indem. Co. v. Tarver*, 635 So. 2d 1090, 1098 (La. 1994).

D. *Analysis regarding the prescription and preemption exception.*

Defendants argue that a one-year prescriptive period applies and at an absolute latest any claim for breach of fiduciary duty needed to be filed by January 31, 2018. Trustee argues that there are sufficient facts to show that Defendants acted intentionally in breaching their fiduciary duties and therefore a two-year prescriptive period applies. Therefore, Trustee argues that the *Complaint* needed to be filed before January 31, 2019 and was timely filed on June 6, 2018.

As previously explained, the Court agrees that the *Complaint* adequately pleads that Defendants acted intentionally when they diverted funds from InforMD to themselves or their LLCs. Therefore, for the purpose of ruling on the *Motion*, under Louisiana Revised Statute 12:1502(D), the Court assumes that the prescriptive period is two years.

The Court construes the prescriptive periods in favor of allowing the claims to go forward. When and how the minority members of InforMD discovered the diverted funds or should have been on notice that the funds were being diverted is a question of fact not appropriate to consider when determining a motion to dismiss. Taking the facts alleged in the *Complaint* as true, that Ruth Bass did not realize that funds were being diverted until January 2017, the Court agrees with Trustee that the prescriptive period did not run until January 31, 2019. Therefore, the Court will not dismiss Count I of the *Complaint* based on the prescriptive period under Louisiana Revised Statutes 12:1502.

b. *Count II: Fraud and Conspiracy to Commit Fraud*

The Court grants the *Motion* as it relates to Count II, because the *Complaint* fails to plead fraud and/or fraud by omission with particularity as required by Federal Rule of Civil Procedure 9(b). In addition, the Court recognizes that conspiracy to commit fraud is not an independent cause of action but depends on the commission of the underlying fraud. Therefore, because the Court

dismisses the claim for fraud, the Court likewise must dismiss the claim for conspiracy to commit fraud.

1. Parties Arguments

Defendants argue that the *Complaint* does not and cannot plead fraud against Skellan because: (1) the facts alleged do not meet the pleading standard under Federal Rule of Civil Procedure 9(b); (2) there are no facts alleged that Skellan made an affirmative misrepresentation that could subject him to a claim for fraud; (3) Trustee cannot plead fraud by omission as Skellan had no duty to speak because he did not have a fiduciary relationship with and owed no fiduciary duties to InforMD or its other members. (Doc. 22-1 at 15-16.)

Defendants also assert that civil conspiracy is not an independent cause of action and instead depends on pleading the underlying tort. (Doc. 22-1 at 17.) Therefore, Defendants reason that because the claim for fraud is not plausibly pled, the claim for conspiracy necessarily fails. Even assuming that the Court finds that Trustee successfully pled a claim for fraud, Defendants argue that the *Complaint* lacks "any factual allegations, much less particularized allegations, of an agreement amount alleged co-conspirators to inflect any wrong or any overt acts Defendants took in furtherance of any conspiracy, and offers nothing allowing the Court to infer a conspiracy." (Doc. 22-1 at 17.)

Trustee responds that the *Complaint* alleges sufficient facts to meet the Federal Rule of Civil Procedure 9(b) pleading standard. Trustee argues that the Court should apply the elements for pleading fraud by omission as recognized by the Eastern District of Louisiana in *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d. 390, 402 (E.D. La. 2016). (Doc. 30 at 12.) To plead fraud by omission with particularity, Trustee argues the *Complaint* must allege sufficient facts to show, "(1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4)

what the person or entity engaged in the fraudulent conduct gained by withholding the information." (Doc. 30 at 12, (quoting *First Am. Bankcard*, 178 F. Supp. 3d. at 402).)

Regarding each of the elements, Trustee argues first, the relevant omission underlying the fraud is that Defendants withheld information relating to the "new legal entities" receiving revenue that should have been paid to InforMD. (Doc. 30 at 13.) Second, Defendants' actions were ongoing from late 2013 to 2017. (Doc. 30 at 14.) Third, each Defendant's role at InforMD resulted in an obligation to disclose fraudulent conduct. (Doc. 30 at 15.) And fourth, that the *Complaint* alleges that individually and collectively, Defendants wrongfully diverted $29,954,733.05.

In the alternative, Trustee requests the Court issue an order instructing that the fraud allegations be pled with more particularity on any aspect found insufficient.

## 2. Applicable Law

Generally, a plaintiff's complaint will survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss if the complaint plausibly states a claim for relief, assuming its factual allegations are true. *Local 731 I.B. of T. Excavators and Pavers Pension Trust Fund v. Diodes, Inc.*, 810 F.3d 951, 956 (5th Cir. 2016) (citing *Ashcroft*, 556 U.S. at 678); *see also*, *Bell Atlantic*, 550 U.S. at 570. However, when the complaint involves a fraud allegation, Federal Rule of Civil Procedure 9(b) requires a higher pleading standard.

Specifically, the plaintiff must plead "with particularity the circumstances constituting fraud."[8] Fed. R. Civ. Pro. 9(b). The Fifth Circuit has interpreted Federal Rule of Civil Procedure 9(b) "strictly[,] requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were

---

[8] The full text of Federal Rule of Civil Procedure 9(b) is as follows: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Natheson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001)). In short, plaintiffs must plead enough facts to illustrate "'the who, what, when, where, why and how' of the alleged fraud." *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

However, fraud by omission claims are by nature difficult to plead with particularity. *First Am. Bankcard*, 178 F. Supp. 3d at 402. The Fifth Circuit has adopted a somewhat more relaxed standard for such cases: "'In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading.'" *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F. 3d 370, 381 (5th Cir. 2004)).

Additionally, under Louisiana law, claims of fraud by silence or omission first require a duty to disclose. There is no general duty to disclose in Louisiana law, but there may be a duty to disclose when there is a fiduciary relationship between the parties. *First Am. Bankcard*, 178 F. Supp. 3d at 401. A fiduciary relationship is a relationship where "confidence is reposed on one side and there is resulting superiority and influence on the other." *Id.* The defining characteristic in a fiduciary relationship "is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Plaquemines Parish Comm'n Council v. Delta Dev. Co.*, 502 So. 2d 1034, 1040 (La. 1987). Louisiana courts tend to recognize a duty to speak in situations where the "failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed."

*First Am. Bankcard*, 178 F. Supp. 3d at 401 (quoting *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1383 (La. 1990)).

Conspiracy to commit fraud is not an independent cause of action in Louisiana. *Agrifund, LLC v. Radar Ridge Planting Co.*, 52,432 (La. App. 2 Cir. 7/17/19), *reh'g denied,* 52,432 (La. App. 2 Cir. 8/27/19) ("An independent cause of action for civil conspiracy does not exist in Louisiana; rather, the actionable element is the intentional tort that the conspirators agreed to commit or committed, in whole or part, causing the plaintiff's injury."). Instead, if a plaintiff can show that "(1) an agreement existed to commit an illegal or tortious act; (2) the act was actually committed; (3) the act caused the plaintiff's injury; and (4) there was an agreement as to the intended outcome or result" then the plaintiff is entitled to recover *in solido* for the damage caused by the act. *Agrifund, LLC v. Radar Ridge Planting Co.*, 52,432 (La. App. 2 Cir. 7/17/19), *reh'g denied,* 52,432 (La. App. 2 Cir. 8/27/19). However, the actionable element is not the conspiracy but is instead the fraud which the conspirators agreed to perpetrate. *Id.*; *see* La. Civ. Code art. 2324.

3. Analysis

Defendants argue that the *Complaint* does not and cannot plead fraud against Skellan because: (1) the facts alleged do not meet the pleading standard under Fed. R. Civ. P. 9(b); (2) there are no facts alleged that Skellan made an affirmative misrepresentation that could subject him to a claim for fraud; (3) Trustee cannot plead fraud by omission as Skellan had no duty to speak because he had no fiduciary relationship with and owed no fiduciary duty to InforMD or its other members. (Doc. 22-1 at 15-16.) Trustee maintains that he states a claim for fraud by omission and the *Complaint* is adequately pled. The Court agrees that Trustee sets out a claim for fraud by omission. However, the Court finds that it is not pled with particularity even under the relaxed

standards for fraud by omission. Therefore, the Court will grant in part the *Motion* and dismiss Count II.

As previously explained, Trustee has alleged sufficient facts to state a claim that Skellan had a fiduciary relationship with InforMD and therefore owed fiduciary duties to InforMD. In addition, Trustee has alleged sufficient facts to state a claim that Skellan had a duty to disclose based on that fiduciary relationship. The *Complaint* also adequately alleges that individually and as a collective group, Defendants did not tell the disinterested minority members of InforMD about the decision to accept payments from the Pogosyan entities for work done by InforMD's sales personnel.

However, the *Complaint* fails to allege specific facts regarding "the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006). The conclusory allegation that Defendants did not tell the minority members of InforMD about the separate payments from the Pogosyan entities "to gain an unjust advantage over InforMD and to certainly cause a loss and inconvenience to InforMD" does not set forth an adequate factual basis of what disclosures Defendants should have made and how those omissions were misleading.

Although Trustee argues that the *Complaint* only alleges a claim for fraud by omission or silence, to the extent the *Complaint* sets out a claim for fraud due to Defendants affirmative misrepresentations, the Court agrees that the *Complaint* does not comply with heightened pleading standard under Federal Rule of Civil Procedure 9(b). The *Complaint* does not identify any specific affirmative misrepresentation or detail the "who, what, where, when, why, and how" as it pertains to Skellan. *Flaherty & Crumrine Preferred Income Fund, Inc. v TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009).

Trustee has failed to plead fraud and/or fraud by omission with enough particularity to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b). In addition, because Trustee has not adequately set out a claim for fraud, the claim for conspiracy to commit fraud likewise fails. Therefore, the Court will grant the *Motion* as it pertains to Count II.

  c. *Count III: Receipt of Payments Not Due and Unjust Enrichment*

  As to Count III, the Court grants the *Motion* in part and will dismiss the claim for receipt of payment not due based on Trustee's concession that the claim as alleged does not meet the elements of the statute. As to the claim for unjust enrichment, the Court denies the *Motion* in part and will not dismiss based on the arguments relating to the "no other remedy available at law" element.

  1. Parties' Arguments

  Defendants argue that the *Complaint* fails to state a claim for receipt of payments not due because "an essential element for such claim is a direct relationship of the two parties interacting, one as the giver of a payment or thing and the other as the recipient of the payment or thing." (Doc. 22-1 at 18, citing *Soileau v. ABC Ins. Co.*, 844 So. 2d 108, 110 (La. App. 3 Cir. 2/5/03).) Because Trustee does not allege that InforMD wrongly paid Defendants, they argue the claim for receipt of payments not due fails. Regarding the claim for receipt of payment not due, Trustee "concede[s] that the scheme confected by Defendants does not fit the letter of Louisiana Civil Code Article 2299 because Defendants were directing payments owed to [I]nforMD away from [I]nforMD before the funds were ever received by [I]nforMD." (Doc. 30 at 37.)

  In addition, Defendants argue that the claim for unjust enrichment fails because Trustee cannot satisfy the "no other remedy at law" element. (Doc. 22-1 at 18-19.) Defendants assert that other legal remedies are available including "causes of action alleged against the managing-members and purported officers of [I]nforMD for breach of fiduciary duty and/or fraud."(Doc. 22-

1 at 20.) In opposition, Trustee maintains that the *Complaint* states a viable claim for unjust enrichment and that any analysis of the "no other remedy available at law" element is premature. (Doc. 30 at 31.)

2. Applicable Law

La. Civ. Code. art. 2298 sets out the cause of action for unjust enrichment:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

La. Civ. Code art. 2298. The elements a plaintiff must prove to prevail on a claim for unjust enrichment are that:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff.

*Baker v. Maclay Properties Co.*, 94-1529 (La. 1/17/95), 648 So. 2d 888, 897.

3. Analysis

The parties' disagreement centers on the "no other remedy available at law" element. The "no other remedy available at law" element precludes a plaintiff from recovering for unjust enrichment when another remedy for the cause of action is available at law. *Williams v. Chesapeake Louisiana, Inc.*, No. CIV.A. 10-1906, 2013 WL 951251, at *8 (W.D. La. Mar. 11, 2013).

Applying the "no other remedy available at law" element, the Supreme Court of Louisiana held that a plaintiff who pled an action for negligent and tortious conduct that was found to be prescribed and dismissed, in filing an amended complaint the "plaintiff [was] precluded from seeking to recover under unjust enrichment." *Walters v. MedSouth Record Mgmt., LLC*, 2010-

0352 (La. 6/4/10), 38 So. 3d 241, 242. The Louisiana Supreme Court explained, "The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Id.* (citing *Jim Walter Homes v. Jessen,* 98–1685, p. 13 (La.App. 3 Cir. 3/31/99), 732 So.2d 699, 706; *see Williams v. Chesapeake Operating, Inc.*, No. CV 10-1906, 2011 WL 13160764, at *2 (W.D. La. Sept. 14, 2011) ("It is well-established that the absence of an available remedy at law is a threshold requirement, as the unjust enrichment remedy is available only to 'fill a gap in the law where no express remedy is provided.'").

The "no other remedy available at law" element prevents a plaintiff from using a claim for unjust enrichment to "circumvent positive rules of law that would otherwise prevent recovery" such as peremption and prescription. *Williams v. Chesapeake Louisiana, Inc.*, No. CIV.A. 10-1906, 2013 WL 951251, at *8 (W.D. La. Mar. 11, 2013). Interpreting Louisiana law to determine whether a jury award for both contract damages and unjust enrichment was permitted under the element, the Fifth Circuit, in a per curium opinion, explained:

> The important question is whether another remedy is available, not whether the party seeking a remedy will be successful. *See Garber v. Baden & Ranier,* 2007–1497, p. 10–11 (La. App. 3 Cir. 4/2/08), 981 So.2d 92, 100 ("[I]t is not the success or failure of other causes of action, but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied. [U]njust enrichment principles are only applicable to fill a gap in the law where no express remedy is provided. (second alteration in original) (citation and internal quotation marks omitted)).

*Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, 581 F. App'x 440, 443–44 (5th Cir. 2014).

Defendants argue that because Trustee has pled other claims to recover the allegedly unjust enrichment, Trustee is barred from pleading a claim for unjust enrichment in the alternative. Trustee responds that because the other claims' validity are at issue, it is premature for the Court to dismiss the unjust enrichment claim.

When faced with the issue of whether the "no other remedy available at law" element would bar a plaintiff from pleading an unjust enrichment claim in the alternative, federal courts have refused to dismiss an unjust enrichment claim because Fed. R. Civ. P. 8(d)(3)[9] allows a party to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).[10]

The Honorable Judge Jackson of the Middle District of Louisiana explained,

> To the extent that Defendant is positing that an unjust enrichment claim may never be pleaded alongside another claim, the Court disagrees. This Court has rejected the "blanket proposition that no plaintiff may ever plead an unjust enrichment claim alongside a claim which would grant a remedy at law." *Prop. One, Inc. v. USAgencies, L.L.C.,* 830 F.Supp. 2d 170, 181 (M.D. La.2011). This Court has held that the law does not compel "an election of remedies between a contractual theory and an unjust enrichment theory prior to filing a complaint." *Id. See also Cent. Facilities Operating Co. v. Cinemark USA, Inc.,* No. CIV.A. 11–660–JJB, 2014 WL 3866086, at *5 (M.D. La. Aug.6, 2014) (finding cognizable unjust enrichment claim in same suit in which plaintiff maintained claim of open account).

> With the validity of Plaintiff's contract with Defendant still in question, and with no other potential remedies at law, the Court does not find a sufficient basis to dismiss Plaintiff's unjust enrichment claim at summary judgment based on the availability of other remedies at law.

*U.S. ex rel. Sun Coast Contracting Servs., LLC v. DQSI, LLC,* No. 13-CV-00568-BAJ-RLB, 2014 WL 7246936, at *4–5 (M.D. La. Dec. 17, 2014); *see Williams v. Chesapeake Operating, Inc.,* No. CV 10-1906, 2011 WL 13160764, at *2 (W.D. La. Sept. 14, 2011) ("The Court agrees that the

---

[9] The *Complaint* was originally filed before the United States Bankruptcy Court for the Middle District of Louisiana. The Federal Rules of Bankruptcy Procedure used in adversary proceedings largely incorporate the Federal Rules of Civil Procedure used in this Court.

[10] Fed. R. Civ. P. 8(d)(3) is a valid procedural rule adopted by the Supreme Court of the United States under the Rules Enabling Act. Although the parties have not argued that the Court should set aside Fed. R. of Civ. P. 8(d)(3)'s inconsistent pleading standard, the Court notes that

> Congress has undoubted power to supplant state law, and undoubted power to prescribe rules for the courts it has created, so long as those rules regulate matters rationally capable of classification as procedure. In the Rules Enabling Act, Congress authorized this Court to promulgate rules of procedure subject to its review, 28 U.S.C. § 2072(a), but with the limitation that those rules "shall not abridge, enlarge or modify any substantive right," § 2072(b).

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 406–07, 130 S. Ct. 1431, 1442, 176 L. Ed. 2d 311 (2010) (internal citations and quotations omitted).

Plaintiff has pled her unjust enrichment claim in the alternative, as she was permitted to by Federal Rule of Civil Procedure 8(d). This claim will only reach a jury if the Plaintiff's breach of contract and breach of the Louisiana Mineral Code claims are rejected. In other words, for the unjust enrichment claim to reach the jury, it must first be determined that the Plaintiff has no other remedy at law."); *Univ. Rehab. Hosp., Inc. v. Int'l Coop. Consultants, Inc.*, No. CIVA 05-1827, 2006 WL 2983050, at *5 (W.D. La. Oct. 16, 2006) ("Interpreting the language of Rule 8(e)(2) of the Federal Rules of Civil Procedure, the Court held that the phrase 'a party may also state as many separate claims or defenses as the party has regardless of consistency,' found in the Federal Rule, was 'unambiguous' and entitled plaintiffs to assert causes of action for breach of contract and unjust enrichment even though such claims are inconsistent.").

Other courts disagree, "The existence of another remedy at law will preclude an unjust enrichment claim." *Andretti Sports Mktg. Louisiana, LLC v. NOLA Motorsports Host Comm., Inc.*, No. CV 15-2167, 2015 WL 13540096, at *7 (E.D. La. Dec. 2, 2015); *see Reel Pipe, LLC v. USA Comserv, Inc.*, No. CV 18-6646, 2019 WL 127055, at *4 (E.D. La. Jan. 8, 2019) ("USA Comserv cannot state a claim for unjust enrichment because other remedies are available at law. USA Comserv argues, however, that it should be permitted to plead an alternative claim of unjust enrichment because C-Logistics denies the existence of a contractual relationship. The absence of a contract, however, would not leave USA Comserv without a remedy at law – it has asserted other claims, sounding in tort, against C-Logistics and Reel Pipe. Accordingly, USA Comserv's unjust enrichment claim (Count 7) must be dismissed.").

The Court agrees with Judge Jackson that "the law does not compel an election of remedies between a contractual theory and an unjust enrichment theory prior to filing a complaint." *U.S. ex rel. Sun Coast Contracting*, 2014 WL 7246936, at *5. As such, the Court will decline to dismiss

Trustee's claim for unjust enrichment at this time as premature because: (1) the validity of the other claims in the *Complaint* are still in question; (2) it is not clear from the face of the *Complaint* that Trustee is attempting to bring a claim that is prescribed or perempted; and (3) Federal Rule of Civil Procedure 8(d)(3) allows a plaintiff to plead claims in the alternative. The *Motion* as it pertains to the claim for unjust enrichment is denied.

### d. Count IV: Conversion

The Court will not dismiss Trustee's claim for conversion because the *Complaint* alleges sufficient facts to adequately plead that InforMD had an ownership interest and right to the funds paid to Defendants. In addition, the Court will apply Louisiana Revised Statutes 12:1502(D)'s two-year prescriptive period to the claim of conversion and will not dismiss Count IV based on prescription at this time.

### 1. Parties' Arguments

Defendants argue that Trustee cannot bring a claim for conversion because InforMD had no right or ownership of the payments and "the tort of conversion is the unlawful interference with the ownership or possession of a movable." (Doc. 22-1 at 22.) In the alternative, Defendants assert that Trustee's claim for conversion should be dismissed because the claim is prescribed under Louisiana's one-year prescriptive period for conversion, which they maintain began when the PNA payment was sent in error to InforMD in 2014, or at the latest February 2016. (Doc. 22-1 at 21-22.)

Trustee responds that the *Complaint* states a viable claim for conversion that has not been prescribed. Trustee argues that the prescriptive period is set by Louisiana Revised Statutes 12:1520, which deals with actions against persons in control of Louisiana business organizations, and not by La. Civ. Code art. 3492, the general tort prescriptive statute. (Doc. 30 at 35-36.) Trustee maintains that the prescriptive period began to run in the late December 2016-January 2017 time

frame when Ruth Bass discovered the never before seen emails and documents. Therefore, Trustee

maintains that the prescriptive period ended in January 2019, after Trustee filed the *Complaint*.

(Doc. 30 at 36.)

2. Applicable Law

In Louisiana, conversion is a delictual tort claim that is defined as "an intentional act done

in derogation of the plaintiff's possessory rights." *Kinchen v. Louie Dabdoub Sell Cars, Inc.,* 05–

218 (La. App. 5 Cir. 10/6/05), 912 So. 2d 715, 718 (emphasis added) (citations omitted), *writ*

*denied,* 05–2356 (La. 3/17/06), 925 So. 2d 544. As set out by the Louisiana Supreme Court,

> A conversion is committed when any of the following occurs: 1) possession is
> acquired in an unauthorized manner; 2) the chattel is removed from one place to
> another with the intent to exercise control over it; 3) possession of the chattel is
> transferred without authority; 4) possession is withheld from the owner or
> possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly;
> or 7) ownership is asserted over the chattel.

*Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 98-0343 (La. 12/1/98), 721 So. 2d 853, 857.

A party who commits conversion does not need to intend "conscious wrongdoing but rather an

intent to exercise dominion or control over the goods that is inconsistent with another's right."

*Aerotek, Inc. v. Revenue Cycle Mgmt., Inc.*, No. CIV.A. 08-4638, 2012 WL 860373, at *5 (E.D.

La. Mar. 13, 2012).

There is not a separate cause of action under Louisiana law for the intentional tort of

embezzlement. Therefore, "[a]ny recovery for acts of embezzlement would be covered either by

the fraud claim or the conversion claim." *Aerotek, Inc. v. Revenue Cycle Mgmt., Inc.*, No. CIV.A.

08-4638, 2012 WL 860373, at *7 (E.D. La. Mar. 13, 2012); *see In re Gulf Fleet Holdings, Inc.*,

491 B.R. 747, 782 (Bankr. W.D. La. 2013) ("While . . . Defendants argue that the payment of

money cannot support a delictual action for conversion, cases appear to recognize a delictual action

for conversion of money.").

For example, in *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, the Fifth Circuit examined whether funds from the sale of vehicles covered by a mortgage had to be kept separate from a car dealership's general funds. 783 F.2d 480, 484 (5th Cir. 1986). The Fifth Circuit explained that because the dealership had agreed that the funds should be kept separate and transferred immediately to the mortgage holder, the dealership had a fiduciary duty to do so. Therefore, "[i]ts failure to segregate and remit the funds and its diversion of them to its own uses constituted a conversion for which it is liable." *Chrysler Credit Corp.*, 783 F.2d at 484. The Fifth Circuit also detailed that the individual officer could be held personally liable,

> There is . . . another basis for holding [the officer] personally liable for some of the funds that were diverted from [the mortgage holder]. Apart from his possible personal liability as a corporate officer, he is liable for any money belonging to [the mortgage holder] that he converted to his own use. [He] knew that the proceeds from the car sales were the property of [the mortgage holder]. When he took those funds for his personal use, he committed a conversion for which he is liable in tort.

*Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 485 (5th Cir. 1986).

The Fifth Circuit articulates three elements to be proven by the plaintiff for the tortious conversion of funds under Louisiana law: "(1) that [plaintiff] owned the funds allegedly misused by the defendant; (2) that the misuse was inconsistent with the plaintiff's rights of ownership and (3) the misuse constituted a wrongful taking of the funds." *Tri-state Bancshares, Inc. v. Scott*, No. CV 15-2053, 2016 WL 4098604, at *4 (W.D. La. July 28, 2016) (quoting *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986)); *see Chrysler Credit Corp. v. Whitney Nat. Bank*, 798 F. Supp. 1234, 1236–37 (E.D. La. 1992), *amended,* 824 F. Supp. 605 (E.D. La. 1993). For misuse to constitute a wrongful taking, a plaintiff must show that the defendant either "initially acquires the chattel by a wrongful act, such as theft or fraud," or "rightfully [came] into possession and then wrongfully refuse[d] to surrender the property to one who is entitled to it." *Chrysler Credit Corp. v. Whitney Nat. Bank*, 798 F. Supp. 1234, 1248 (E.D. La.

1992), *amended,* 824 F. Supp. 605 (E.D. La. 1993) (citing *Louisiana State Bar Ass'n v. Hinrichs,* 486 So. 2d 116, 121 (La. 1986)).

3. Analysis

Defendants argue that the claim for conversion fails because the *Complaint* does not allege sufficient facts to show that InforMD had an ownership interest in the funds paid by the Pogosyan entities to Defendants. The Court does not agree.

Louisiana law, as explained by the Fifth Circuit, recognizes a claim for conversion of funds when a plaintiff can show: "(1) that [plaintiff] owned the funds allegedly misused by the defendant; (2) that the misuse was inconsistent with the plaintiff's rights of ownership and (3) the misuse constituted a wrongful taking of the funds." *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986). In this case, the *Complaint* alleges that the conversion occurred when Defendants: (1) received payments from the Pogosyan entities that they knew belonged to InforMD; (2) deprived InforMD of possession of revenue and (3) refused to comply with InforMD's minority members request for an accounting and return of the funds.

The *Complaint* contains numerous allegations that InforMD's sales staff did the work to earn the payments made by the Pogosyan entities and Defendant did not perform any work for the Pogosyan entities that would justify the payments. These allegations are sufficient under Federal Rule of Civil Procedure 8(a) to allege that InforMD asserts an ownership interest in the funds that were paid to Defendant by the Pogosyan entities. The Court acknowledges that the factual allegations in the *Complaint* are sparse. But taking all factual allegations in the *Complaint* as true and drawing all reasonable inferences in favor of Trustee, the Court is satisfied that the *Complaint* pleads a plausible claim for conversion.

The Court now turns to Defendants' argument that the claim for conversion is time-barred under Louisiana law's one-year prescriptive period. As authority for the one-year prescriptive

period, Defendants cite *In re Succession of Landrum*, which states "under Louisiana law, the prescriptive period for conversion is one year from the time that the plaintiff is or should be on notice of the alleged act of conversion." 2007-1144, p. 5 (La. App. 1 Cir. 3/26/08), 985 So. 2d 778, 780, *writ denied,* 2008-0896 (La. 6/20/08), 983 So. 2d 1277. The Louisiana Civil Code states that delictual actions, like conversion, "are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." Louisiana. Civ. Code. art. 3492.

However, as Trustee points out, Louisiana Revised Statutes 12:1502 sets out a specific prescriptive and preemption period for actions against persons who control business organizations.[11] In analyzing whether 12:1502 or Louisiana Civ. Code. art. 3492 applies to a claim for conversion, the Honorable Jay Zainey of the Eastern District of Louisiana, stated:

> The Court is persuaded that [plaintiff's] claims against [defendant] for fraud and conversion are also covered by the statute. Section 1502(D) expressly extends the statute to claims for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for acts or omissions in bad faith, or involving fraud. [Plaintiff's] fraud and conversion claims against [defendant] unquestionably fall into this category of acts . . . [because] Section 12:1502 is clear and unambiguous in that it applies to all claims in tort between partners.

*Pan Am. Life Ins. Co. v. Louisiana Acquisitions Corp.*, No. CV 13-5027, 2016 WL 2926510, at *4 (E.D. La. May 19, 2016), *aff'd,* 757 F. App'x 320 (5th Cir. 2018). Furthermore, "'[i]t is a well-settled canon of statutory construction that the more specific statute controls over the general

---

[11] La. R.S. 12:1502(D) states:

> No action for damages against any person listed in Subsection A of this Section for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for an intentional unlawful distribution, or for acts or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within two years from the date of the alleged act or omission, or within two years from the date the alleged act or omission is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act or omission.

statute.'" *Burge v. State*, 2010-2229, p. 5 (La. 2/11/11), 54 So. 3d 1110, 1113 (quoting *State v. Sharp,* 05–1046, pp. 5–6 (La. App. 1st Cir. 6/28/06), 939 So.2d 418, 421.). The Court follows rules of statutory construction of the Louisiana Supreme Court and will apply "the statute specifically directed to the matter at issue . . . as an exception to the statute more general in character." *State v. Campbell,* 03–3035, p. 8 (La.7/6/04), 877 So.2d 112, 118. Therefore, the Court will apply Louisiana Revised Statutes 12:1502(D)'s two-year prescriptive period to the claim of conversion.

Having determined that the relevant prescriptive period is two years, the Court will construe the prescriptive period in favor of allowing the claim to go forward. When and how the minority members of InforMD discovered the diverted funds or should have been on notice that the funds were being diverted is a question of fact that the Court will not consider at this time. Taking the facts alleged in the *Complaint* as true and that Ruth Bass did not realize that funds were being diverted until January 2017, the Court agrees with Trustee that the prescriptive period did not run until January 2019. Therefore, the Court will not dismiss Count IV of the *Complaint* based on the termination of the prescriptive period under Louisiana Revised Statutes 12:1502.

The *Motion* is denied regarding Count IV because the *Complaint* alleges sufficient facts to adequately plead a claim for conversion that has not been prescribed.

*e. Count V: Fraudulent Conveyance*

The Court will not dismiss Trustee's claim to avoid the fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B) because the *Complaint* alleges sufficient as to the elements of a claim for constructive fraud.

1. Parties' Arguments

Defendants argue that Trustee's claim that the February 2016 Purchase Agreement constituted a fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B) should be dismissed because Trustee fails to plead with any particularity the facts required to establish that (1) a transfer was

made to Defendants, (2) InforMD received less that reasonably equivalent value, and (3) the transfer occurred when InforMD was insolvent or that the transfer rendered InforMD insolvent. (Doc. 22-1 at 23-24.)

Trustee maintains that the *Complaint* states a plausible claim that the Buy-Out Agreement constitutes a fraudulent conveyance because it alleges specific facts relating to each element. (Doc. 30 at 30-31.) Specifically, Trustee maintains that a transfer was made by InforMD to Defendants amounting to $116,000.00, that on the face of the transfer it is clear that it was not for reasonably equivalent value, and that there are sufficient indicia of insolvency for the Court to infer insolvency. (Doc. 30 at 31.)

2. Applicable Law

11 U.S.C. § 548(a)(1)(B), allows the trustee to avoid any transfer of a property interest of the debtor that amounts to constructive fraud. Section 548(a)(1)(B) states in pertinent part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily— . . .
>
>> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

11 U.S.C. § 548. Therefore, to adequately plead a claim for constructive fraud Trustee must allege sufficient facts to show:

> (1) the debtor transferred an interest in property, (2) the transfer of that interest occurred within two years prior to the filing of the bankruptcy petition, (3) the debtor was insolvent on the date of the transfer or became insolvent as a result thereof, and (4) the debtor received less than reasonably equivalent value in exchange for such transfer.

*In re JCC Envtl., Inc.*, 575 B.R. 692, 700 (E.D. La. 2017) (citing *Tow v. Bulmahn*, 565 B.R. 361, 366 (E.D. La. 2017).

3. <u>Analysis</u>

Defendants asserts that Trustee needed to plead with particularity a claim to avoid a constructive fraudulent transfer under 11 U.S.C. § 542(a)(1)(B). There is a split in the case law regarding whether a claim for constructive fraud must be pled with particularity under Rule 9(b), with no controlling Fifth Circuit precedent. *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 120 (5th Cir. 2019) (declining to answer the question of whether Rule 8(a) or Rule 9(b) govern the pleading standards for a constructive fraudulent conveyance.). The majority of courts hold that unlike a claim for actual fraud, under 11 U.S.C. § 548(a)(1)(A), a claim for constructive fraud does not depend on the intent of the parties in making the transfer. Collier on Bankruptcy explains:

> With respect to constructively fraudulent transfers plead under section 548(a)(1)(B), however, courts have taken a different approach. Most courts hold that "Rule 9(b) does not apply to claims for avoidance of constructively fraudulent transfers because such claims are not based on actual fraud but instead rely on the debtor's financial condition and the sufficiency of consideration provided by the transferee." Rather, constructively fraudulent transfer claims under § 548(a)(1)(B) must satisfy Rule 8(a)'s somewhat less exacting pleading standards.

5 *Collier on Bankruptcy* ¶ 548.11 (16th ed. 2019); *see In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417, 428–29 (Bankr. S.D.N.Y. 1998) ("Although tagged with the title "fraudulent," fraud has nothing to do with the constructive fraudulent transfer claim. The transaction is based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee.").

The Seventh Circuit Court of Appeals has applied Federal Rule of Civil Procedure 9(b) to a claim for constructive fraud. Going against the majority approach, the Seventh Circuit stated:

> Because this statute creates a cause of action for constructive fraud that requires neither evidence of actual intent to defraud nor a specific misrepresentation by the defendant, we will evaluate whether GE Capital has plead the circumstances surrounding the elements of this statutory cause of action with sufficient particularity to satisfy Rule 9(b).

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997). The court did not further explain its reasoning in applying Federal Rule of Civil Procedure 9(b).

Given the lack of controlling Fifth Circuit precedent, the Court will follow the majority approach and decline to apply Federal Rule of Civil Procedure 9(b) to Trustee's claim under 11 U.S.C. § 548(a)(1)(B).

Applying Federal Rule of Civil Procedure 8(a), the Court concludes that the *Complaint* sets forth sufficient facts to state a plausible claim that the Buy Out Agreement constitutes a fraudulent transfer under 11 U.S.C. § 548(a)(1)(B). First, the *Complaint* alleges that (1) InforMD transferred approximately $116,000 to the sellers, including Skellan; and (2) the Buy-Out Agreement was signed in February 2016, which is within two years of InforMD filing a Chapter 7 bankruptcy.

Next, the Court turns to whether InforMD received less than equivalent value under the Buy Out Agreement for the $116,000 transfer to the sellers. The *Complaint* alleges that the transfer to purchase the selling members' membership interest had no value for InforMD, and therefore was less than reasonably equivalent value. As explained by the Seventh Circuit, "A payment to repurchase membership interests is in the nature of a dividend, which distributes profits to investors (and changes proportional ownership interests) but does not add to the firm's financial health." *Primex Plastics Corp. v. Zamec*, 675 F. App'x 629, 631 (7th Cir. 2017); *see* 5 *Collier on Bankruptcy* ¶ 548.05 (16th ed. 2019) ("Dividends or other distributions to equity owners in respect of their equity interests are transfers for which the corporation or other entity receives no value. So too redemptions of stock give no value; they are a reduction in overall equity, not the purchase of an asset."). Based on the type of transfer, the allegations in the *Complaint*—that InforMD received no value in exchange for the $116,000 because it was repurchasing its own membership interests—is sufficient to allege a plausible claim that InforMD received less than equivalent value.

As to whether InforMD was insolvent in February 2016, the *Complaint* alleges that InforMD was unable to make the necessary payments under the pay schedule outlined in the Buy-Out Agreement, that testimony at the 341 Meeting of Creditors detailed that the intent of the Buy-Out Agreement was to drain InforMD's capital, and a conclusory allegation that InforMD was insolvent or became insolvent as a result of the Buy-Out Agreement. Although these factual allegations certainly do not prove insolvency, viewing the allegations in the light most favorable to Trustee, the Court is persuaded that Trustee states a plausible claim that InforMD's debts were beyond its ability to pay such debts as they matured.

The Court will therefore deny the *Motion* as it pertains to Count V.

### f. Leave to Amend the Complaint

Trustee seeks leave to amend his complaint. "[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to

amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Here Trustee has not previously sought leave to amend. Therefore, the Court will exercise "wise judicial practice" and allow Trustee twenty-eight days from entry of this Ruling to amend the *Complaint*. If Trustee fails to amend the complaint in this time the Court will dismiss Count II and the claim in Count III for receipt of payments not due, with prejudice.

CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion* is **GRANTED** in part and Count II for fraud and conspiracy to commit fraud and Plaintiff's claims in Count III for receipt of payments not due are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** Plaintiff may file an amended complaint within 28 days of entry of this order. Failure to amend the complaint within 28 days will result in dismissal with prejudice of these counts. Defendants are instructed to contact the Court if the 28-day period passes and Plaintiff has failed to file any amended complaint.

In all other respects Defendants' *Motion* is **DENIED**.

Signed in Baton Rouge, Louisiana, on September 27, 2019.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**