# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

MARTIN A. SCHOTT, Chapter 7 Trustee
for the bankruptcy estate of InforMD, LLC,

CIVIL ACTION

VERSUS

No. 18-759-JWD-RLB

SHELLEY S. MASSENGALE, et al.

## RULING AND ORDER

This matter is before the Court on its own motion reconsidering its Order (Doc. 4) granting the *Motion and Incorporated Memorandum to Withdraw the Reference* ("*Motion*") filed by C-Squared Management, LLC and Shelley Massengale, individually and as Legal Representative for her minor children ("Massengale Defendants"). (Doc. 1.) The Court, in its discretion, has carefully considered the law, facts in the record and for the reasons explained below will refer this matter to the United States Bankruptcy Court for the Middle District of Louisiana for all pre-trial and discovery matters and will permit the parties to re-urge withdrawal of the reference if it is necessary for the matter to proceed to a jury trial.

## RELEVANT FACTUAL BACKGROUND

InforMD, LLC, ("Debtor") was a Louisiana limited liability company, domiciled in East Baton Rouge Parish, and filed for Chapter 7 bankruptcy in June of 2017. On June 6, 2018, the Chapter 7 Trustee, Martin A Schott, filed Adversary Proceeding 18-1025 alleging fraudulent conveyances, breaches of the fiduciary duties of care and loyalty, conversion of funds owed to InforMD, breaches of duties owed by members of LLCs and self-dealing, fraud and conspiracy to commit fraud, receipt of payments not due and unjust enrichment against the Massengale Defendants, Mickey Guidry, Jesse Daigle, Ryan Forsthoff, RC Consulting of Louisiana, LLC,

Executive Development Advisors, LLC, Matthew Skellan, and Skellan Medical LLC. (Doc. 1 in Adv. Pro. No. 18-1025.)

On the same day, the Massengale Defendants filed a *Demand for a Jury Trial* (Doc. 23 in Adv. Pro. No. 18-1025) and the *Motion*. (Doc. 25 in Adv. Pro. No. 18-1025 and Doc. 1.) The Massengale Defendants also filed proofs of claim against the bankruptcy estate. (*Claims Register*, Claim 11, 12, and 13 in Case No. 17-10579.) Mickey J. Guidry filed a proof of claim against the bankruptcy estate. (*Claims Register*, Claim 8 in Case No. 17-10579.) Jesse Daigle filed a proof of claim against the bankruptcy estate. (*Claims Register*, Claim 9 in Case No. 17-10579.) Ryan Forsthoff filed a proof of claim against the bankruptcy estate. (*Claims Register*, Claim 10 in Case No. 17-10579.) The remaining defendants, RC Consulting of Louisiana, LLC; Executive Development Advisors, LLC; Matthew Skellan; and Skellan Medical, LLC did not file proofs of claim against the bankruptcy estate before the claims bar date.

<u>APPLICABLE LEGAL STANDARD</u>

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b). A district court may refer any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 to the bankruptcy judges for the district. 28 U.S.C. § 157(a). In the Middle District of Louisiana, under Local Civil Rule 83(d)(1), the District Court "under the authority of 28 U.S.C. § 157. . . refers to the Bankruptcy Judges of this District all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11." However, upon timely motion of any party, the district court can withdraw the reference if that party can show cause for withdrawal.  28 U.S.C. § 157(d).

Ultimately, the decision to withdraw the reference from the bankruptcy court is "left to the discretion of the district court." *In re Mirant Corp.*, 197 Fed. App'x 285, 294 (5th Cir. 2006).

28 U.S.C. § 157(d) provides two methods of withdrawal of the reference: permissive (or discretionary) and mandatory. It provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). As will be discussed below, the main issue here is whether under permissive withdrawal, cause exists to withdraw the reference.

In *Holland Am. Ins. Co v. Succession of Roy*, the Fifth Circuit set out factors for the Court to consider when determining if cause exists to permissively withdraw the reference under 28 U.S.C. § 157(d).  The *Holland* factors are:

> (1) whether the nature of the proceedings are core or non-core; (2) whether withdrawal promotes the economical use of the parties' resources; (3) whether withdrawal will promote uniformity in bankruptcy administration; (4) whether withdrawal motivates forum-shopping; (5) whether withdrawal will expedite the bankruptcy process; and (6) whether a party has demanded a jury trial.

*NRG New Roads Holdings LLC v. Horton*, No. CV 15-421-JJB-RLB, 2015 WL 6167817, at *4 (M.D. La. Oct. 21, 2015) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)). The initial consideration before the court should be whether the lawsuit is a "core" proceeding that the bankruptcy court has the jurisdiction to resolve. *Executive Benefits Ins. Agency*, 573 U.S. 25. "Withdrawal of reference, however, is intended to apply only to a limited class of proceedings and is not intended to be an 'escape hatch through which most bankruptcy matters [could] be removed to a district court.'" *Lifemark Hosps. of Louisiana, Inc. v. Liljeberg Enterprises, Inc.*, 161 B.R. 21, 24 (E.D. La. 1993) (citing *In re National Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1989)).

<u>ANALYSIS</u>

1. Core v. non-core proceeding

In the *Motion*, the Massengale Defendants argue that this matter involves non-core proceedings due to the state law theories under the Louisiana Civil Code, which could have arisen absent the bankruptcy. (Doc. 1 at ¶ 5.)

28 U.S.C. § 157(b)(1) provides, "bankruptcy judges may hear and determine all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11…and may enter appropriate orders and judgments, subject to review under section 158 of this Title." Bankruptcy courts have the constitutional authority to enter final orders on claims that are "core" proceedings and are therefore "derived from or dependent on bankruptcy law." *Stern v. Marshall*, 564 U.S. 462, 475, 499 (2011).

Core proceedings are those that arise in Title 11 cases or arise under Title 11. 1 Collier on Bankruptcy ¶ 3.02[2] (16th ed. 2009) (defining core proceedings). Although 28 U.S.C. § 157(d) does not define a "core" proceeding, the Fifth Circuit defines "core" proceedings as those that "involve[ ] a right created by the federal bankruptcy law" or that "would arise only in bankruptcy." *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987).  Section 157(b)(2) lists examples of "core" proceedings, including "counterclaims by the estate against persons filing claims against the estate;" "proceedings to determine, avoid, or recover preferences;" "proceedings to determine, avoid, or recover fraudulent conveyances;" and "determinations as to the dischargeability of particular debts," 28 U.S.C. §§ 157(b)(2)(C), (F), (H).

Congress's designation of fraudulent conveyance and avoidance actions as "core" proceedings, has created decades of controversy over the kinds of cases a bankruptcy court may constitutionally decide. The Supreme Court attempted to clarify the uncertainty in *Stern v. Marshall*, 64 U.S. 462 (2011). *Stern* held that despite a particular cause of action being considered "core", it may nonetheless be the kind of case which requires final resolution by an Article III

court. *Id*. at 482. Therefore, under *Stern*, bankruptcy courts do not have the "constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id*. at 503.  Rather, there are some claims that may be statutorily designated as "core," on which the bankruptcy court cannot enter final orders due to constitutional limitations on the bankruptcy court's jurisdiction. *Id*. at 482 ("Although we conclude that § 157(b)(2)(C) permits the Bankruptcy Court to enter final judgment…, Article III of the Constitution does not.").

This case involves both core and non-core matters that may present a *Stern* issue. However, "while a bankruptcy court may not enter a final judgment on a 'bankruptcy-related claim', a bankruptcy court may issue proposed findings of fact and conclusions of law to be reviewed de novo by the district court. *U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 425 (5th Cir. 2014), *as revised* (Sept. 2, 2014) (citation omitted). As the Bankruptcy Court can issue proposed findings of fact and conclusions of law on the non-core matters, the Court concludes that this factor is neutral regarding withdrawing the reference.

2. Judicial efficiency, uniformity in the bankruptcy administration and economical use of party resources.

The Massengale Defendants argue that judicial efficiency, uniformity in the bankruptcy administration and economical use of party resources would be promoted by withdrawing the reference. (Doc. 1 at ¶ 7.) Specifically, the Massengale Defendants assert that judicial efficiency would be enhanced because the Court would become familiar with the case through pre-trial motions. (Doc. 1 at ¶ 8.) In addition, the Massengale Defendants maintain that the administration of the bankruptcy estate would not be impacted because the bankruptcy case could continue without resolution of this case. (Doc. 1 at ¶ 8.) These Defendants insist that the parties' resources would be more economically used by withdrawing reference because otherwise, the Bankruptcy

Court would have to make reports and recommendations, with de novo review by this Court, which would be duplicative. (Doc. 1 at ¶ 8.)

The Court does not agree. Judicial efficiency, uniformity in the bankruptcy administration and the economical use of the parties' resources will be promoted by maintaining the reference. Along with this matter, the Trustee has also brought adversary proceedings alleging fraudulent transfers against many of the defendants in this case. (*See* Adversary Pro. Nos. 19-1017, 19-1018, 19-1019, 19-1020, 19-1021, 19-1022.) These adversary proceedings have been stayed until this case is concluded. Given the numerous similar cases pending before the bankruptcy court, uniformity and efficiency will be better achieved by maintaining the reference. "If a bankruptcy court is already familiar with the facts of the underlying action, then allowing that court to adjudicate the proceeding will promote uniformity in the bankruptcy administration. *Tow v. Park Lake Cmty's, LP (In re Royce Homes*, *LP*), 578 B.R. 748, 759 (Bankr. S.D. Tex. Houston Nov. 2, 2017.) Given the bankruptcy court's familiarity with the factual and legal issues presented in both the reference dispute and the underlying adversary proceeding, this Court finds that it would be disruptive to the uniformity of the bankruptcy administration for the suit to continue to be withdrawn. *See Veldekens v. GE HFS Holdings, Inc. (In re Doctors Hosp. 1997, LP)*, 351 B.R. 813, 867 (Bankr. S.D. Tex. 2006.)

Second, the use of the debtor's and creditors' resources efficiently "in efforts to administer the debtor's estate and to resolve any related litigation is of significant importance." *Plan Administrator v. Lone Star RV Sales, Inc (In re Conseco Fin. Corp.)*, 324 B.R. 50, 55 (N.D. Ill. 2005) (citing *Holland*, at 999). When the trustee needs to bring "quick resolution to the matters at bar, and the bankruptcy court is familiar with the parties, the factual background, and the legal issues involved, the goals of judicial efficiency and economical use of the estate's resources are

best met by allowing the suit to remain in the bankruptcy court." *In re Royce Homes LP*, 578 B.R. at 762. In this matter, speedy resolution is desired by both parties because the bankruptcy case been ongoing since 2017, and the other adversary proceedings have been stayed. Given this Court's workload,[1] this Court finds that referring this case back to the bankruptcy court for discovery and pretrial matters will result in a speedier resolution of all matters between and among the parties. Although it may be necessary for the bankruptcy court to make a report and recommendation on non-core matters subject to de novo review by this Court, the Court finds that, on balance, judicial efficiency would be served by referring the case to the bankruptcy court.

3. Right to a jury trial

A bankruptcy court does not have the constitutional or statutory authority to conduct a jury trial absent the consent of the parties. *See* 28 U.S.C. § 157(e) ("If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties."); *In re Clay*, 35 F.3d 190, 191 (5th Cir. 1994) (holding that a bankruptcy judge does not have the constitutional and statutory authority to conduct a jury trial, even for "core" proceedings without the consent of the parties.). Therefore, if the right to a jury trial exists, then there is sufficient ground to withdraw the reference. *Adler v. Walker* (*In re Gulf States Long Term Acute Care of Covington, L.L.C.*), 455 B.R. 869, 876 (E.D. La. 2011).

The Seventh Amendment preserves the right to a jury trial "in suits at common law." U.S.

---

[1] A recent statistical analysis based on "weighted filings" across the country demonstrated that this Court was the fourth busiest Federal District Court in the country. *Middle District of Louisiana is Nation's 3rd Most Productive U.S. District Court*, United States District Court, Middle District of Louisiana, https://www.lamd.uscourts.gov/news/middle-district-louisiana-3rd-most-productive-us-district-court-feb2019 (last visited November 27, 2019).

Const. amend. VII. As explained by the Supreme Court in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), the Supreme Court has "consistently interpreted the phrase 'Suits at common law' to refer to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" *Granfinanciera*, 492 U.S. at 41 (citing *Parsons v. Bedford,* 3 Pet. 433, 447, 7 L.Ed. 732 (1830)).

To determine if the right to a jury trial exists under the Seventh Amendment the Court follows the two-prong analysis set forth in *Granfinanciera*. "There are two prongs of analysis: (1) whether the cause of action is similar to 18th–century actions brought in the courts of England prior to the merger of courts of law and equity, and (2) whether the remedy sought is legal or equitable in nature." *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 455 B.R. at 876.

In *Granfinanciera*, the Supreme Court faced the issue of whether parties have a right to a jury trial when sued by a trustee in bankruptcy to recover an allegedly fraudulent transfer for the bankruptcy estate. 492 U.S. 33 (1989). The Supreme Court held, "[p]rovided that Congress has not permissibly assigned resolution of the claim to a non-Article III adjudicative body that does not use a jury as factfinder, the Seventh Amendment entitles a person *who has not submitted a claim against a bankruptcy estate* to a jury trial when sued by the bankruptcy trustee to recover an allegedly fraudulent monetary transfer." *Id*. at 34 (emphasis added).

The Supreme Court has held that a creditor/defendant waives its right to a jury trial "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (citing *Granfinanciera*, 492 U.S. at 58-59). Applying

the holding in *Lagenkamp*, to determine if a jury right was extinguished with the filing of a proof of claim, the Fifth Circuit considered in relevant part: (1) whether the creditor had filed proofs of claim in the bankruptcy proceeding; (2) whether the proofs of claim had been resolved, and, if not, whether their resolution would necessarily require the resolution of the debtor's fraudulent transfer claims (asserted by the Trustee); and (3) whether the case presented a *Stern* issue. *U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 418 (5th Cir. 2014), *as revised* (Sept. 2, 2014).

Resolution of this case is integral to the claims allowance and disallowance process because 11 U.S.C. § 502(d) instructs the bankruptcy court to

> disallow any claim of any entity . . . that is a transferee of a transfer avoidable under section . . . 544, . . . 548, . . . of this Title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable . . .

11 U.S.C. § 502(d); *see U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 419 (5th Cir. 2014), *as revised* (Sept. 2, 2014) ("[The creditor] filed proofs of claim, and under the mandatory language of § 502(d), the bankruptcy court could not resolve those claims in favor of [the creditor] if [the creditor] had been the transferee of a fraudulent transfer. . . The validity of [the Debtor's] objections does not alter the fact that the bankruptcy court was required to consider the fraudulent transfer issue as a component of the claims-allowance process.").

Therefore, under *Granfinanciera* and *Langenkamp*, the Massengale Defendant's filing proofs of claim triggered the process of "allowance and disallowance of claims," subjecting Defendant to the equitable jurisdiction of the bankruptcy court and waiving its right to a jury trial at least on the claims relating to the fraudulent transfers. *Granfinanciera*, 492 U.S. at 58-59; *Langenkamp*, 498 U.S. at 45.

However, this matter also presents claims of fraud, conversion, and other legal causes of action. Although the Massengale Defendants are the only defendants who made a jury demand, there are defendants in this case who have not submitted proofs of claim against the bankruptcy estate and therefore have not yet waived their right to a jury trial on these legal causes of action.

That there may be the right to a jury trial or non-core matters does not require this Court to immediately withdraw the reference. As explained by the Fourth Circuit:

> Our holding that bankruptcy judges are not authorized to conduct jury trials does not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial. The decision whether or not to withdraw the referral immediately "is frequently more a pragmatic question of efficient case administration than a strictly legal decision." *Travelers Ins. Co. v. Goldberg,* 135 B.R. 788, 792 (D.Md.1992). While the bankruptcy court may be uniquely qualified to conduct pre-trial matters in some core proceedings, in other cases such a referral would be a "futile detour, requiring substantial duplication of judicial effort." *Compare Travelers Ins. Co.,* 135 B.R. at 792–93 *with City Fire Equipment Co. v. Ansul Fire Protection Wormald U.S., Inc.,* 125 B.R. 645, 649 (N.D.Ala.1989) (bankruptcy court has the authority and is uniquely qualified to supervise discovery and decide pre-trial issues).

*Official Committee of Unsecured Creditors v. Schwartzman* (*In re Stansbury Poplar Place, Inc.*), 13 F.3d 122, 128 (4th Cir. 1993). Therefore, whether or not a right to a jury trial exists, "[t]he district court has the option, at that point, of withdrawing the entire matter, or withdrawing only the trial portion, leaving pre-trial and discovery matters to be handled by the bankruptcy judge." *Blackwell v. Zollino* (*In re Blackwell ex rel. Estate of I.G. Servs., Ltd.*), 267 B.R. 724, 731 (Bankr. W.D. Tex. 2001). This factor weighs in favor of withdrawing the reference only when it becomes necessary to impanel a jury and proceed to trial.

4. <u>Forum shopping</u>

A motion to withdraw the reference provides "significant risks of forum shopping because a party can first observe the bankruptcy judge' rulings, and then decide whether to bring

the motion." *Kingdom Fresh Produce, Inc. v. Delta Produce, LP*, No. 5:14-MC-899, 2015 WL

869240, at *4 (W.D. Tex. Feb. 27, 2015). As explained by a bankruptcy court in the Western

District of Texas, a motion to withdraw reference can be subterfuge for opportunistic delay or

forum-shopping.

> When a party in a given adversary proceeding filed in a bankruptcy case first
> demands a jury trial and then promptly refuses to consent to the conduct of that trial
> before the bankruptcy court, it is a safe bet that the tactic does not grow out of a
> zealous devotion to constitutional principles. In the vast majority of cases,
> the *real* reason for demanding a jury has less to do with a party's deep and abiding
> respect for either the jury system or the majesty of Article III of the Constitution
> and much more to do with either opportunistic delay or forum-shopping. . . the
> creditor simply did not want to be before a bankruptcy judge on a question
> involving preferential transfers. Better to be before a tribunal less familiar with the
> details of the statute, and perhaps more susceptible to "equity" arguments.

*In re Blackwell ex rel. Estate of I.G. Servs., Ltd.*, 267 B.R. at 727–28.

In this case, where a number of Defendants have submitted a proofs of claim, and it is not

clear how judicial efficiency or the administration of the bankruptcy case would be promoted by

withdrawal of the reference, the Court believes that forum shopping or opportunistic delay could

be the motivating factor in seeking to withdraw the reference. Therefore, this factor weighs

against withdrawing the reference.

On the whole, and upon the Court's reconsideration, the Court finds that withdrawing

only the trial portion, leaving the remainder of the case to be handled by the bankruptcy court is

the more pragmatic option for efficient case administration. In addition, it decreases the risk of

forum shopping, while protecting the right to a jury trial in an Article III court if the case

proceeds to trial.

<u>CONCLUSION</u>

Accordingly,

IT IS ORDERED that the Court reconsiders its order granting the *Motion to Withdraw the Reference* (Doc. 1);

IT IS FURTHER ORDERED that this case, Civil Action 18-759, is referred to the United States Bankruptcy Court for the Middle District of Louisiana for all pre-trial and discovery matters, including dispositive motions within the Bankruptcy Court's jurisdiction and Federal Rules of Bankruptcy Procedure 7008 and 7012;

IT IS FURTHER ORDERED that if the Bankruptcy Court determines it cannot enter final orders consistent with Federal Rules of Bankruptcy Procedure 7008 and 7012, the Bankruptcy Court will make reports and recommendations to this Court on dispositive motions;

IT IS FURTHER ORDERED that should the case progress to trial and it is necessary to impanel a jury, the parties may re-urge a motion to withdraw the reference in anticipation of trial.

Signed in Baton Rouge, Louisiana, on June 29, 2020.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**